UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| LAURA SANTOYO, | Case No.  2:24-cv-1856-JDP |
| Plaintiff, | |
| v. | ORDER |
| RICH PRODUCTS CORPORATION, | |
| Defendant. | |

Plaintiff Laura Santoyo worked as a machine operator at defendant Rich Products Corp., a food manufacturer.  While operating a machine, plaintiff failed to follow protocol, which resulted in her injuring her finger.  Defendant subsequently terminated plaintiff's employment for failing to follow protocol.  Plaintiff has brought claims for disability discrimination, failure to prevent discrimination, failure to accommodate, and wrongful termination.  Defendant now moves for summary judgment as to all claims.  For the reasons explained below, defendant's motion is granted in its entirety.

**Background**

In 2000, plaintiff became employed at a food manufacturing facility in Lodi, California that was operated by a previous owner.  ECF No. 40-10 at 8.  Beginning in approximately 2010, plaintiff began working as a machine operator at the facility.  *Id*. at 15.  In 2020, defendant purchased the facility and overtook operations.  ECF No. 40-8 at 2.

1

In compliance with legal requirements, defendant maintained a "Lockout/Tagout" or "LOTO" program. *See* ECF No. 42-1 at 4; ECF No. 40-11 at 10-13. Specifically, defendant "was required to have a written hazardous energy control procedure, specific to each machine/piece of equipment that included, among other things, the intended use of such a procedure and the procedural steps for shutting down such machines and placing locks and tags on such machines." ECF No. 40 at 12 (citing Cal. Code Regs. tit. 8, § 3314). Plaintiff "was up to date on her authorized training for lock/tagout at the time of the incident," which included "hands-on training for the equipment, included machine guarding training, avoiding reaching in injuries training and the general awareness training for lockout/tagout." ECF No. 40-10 at 191-92. Plaintiff most recently had completed training regarding the LOTO program on January 20, 2021. *See id*. at 18; ECF No. 40-2 at 6.

One of the machines that plaintiff was trained on was the Affeldt machine, which created bags from plastic film and then deposited bread into the bags. ECF No. 40-10 at 26. The film roll was situated outside of the machine, and there were "no moving parts near the film roll itself." *Id*. at 29. When the film roll ran low, the correct procedure to change the film roll was to cut it, put in a new roll, and "splice the old roll that is partly stuck in the machine and the new roll" with a piece of tape. *Id*. at 30. The film roll needed to be changed on the Affeldt machine approximately seven or eight times a day. *Id*. Sometimes the plastic film or tape would jam inside the Affeldt machine at a "narrow exit near the heat sealer." *Id*. at 33-34. Employees were not required to lockout the Affeldt machine while changing the film roll. *Id*. at 274. However, if the plastic or tape created a jam such that an employee had to reach into the machine, defendant's policy required the employee to first lockout the machine. *Id*. at 276. Plaintiff acknowledges that she received training that instructed her to "[u]se the appropriate tool to reach the stuck product only after having locked and tagged the machine" and to "[n]ever use [her] hand." *Id*. at 72-73.

On May 8, 2023, plaintiff was operating the Affeldt machine while a coworker ("Coworker One") assisted her. *Id*. at 43. While operating the machine, plastic became jammed. *Id*. Plaintiff states that she told Coworker One not to turn the machine back on, but that Coworker One did not hear her. ECF No. 40-10 at 43. Without locking out or tagging out the

machine per defendant's policy, plaintiff reached her hand inside the machine to pull out the plastic film. *Id*. at 41. Plaintiff also acknowledges that there was a "metal hook there that we could use to, you know, pull the bread out if it got stuck, or the plastic itself." *Id*. at 44. However, plaintiff states that she thought that "it was faster" to stick her hand into the machine because she "thought the machine was off." *Id*. at 44-45.

While plaintiff had her hand inside the Affeldt machine, Coworker One turned the machine back on, and plaintiff's finger "became jammed up near the heat sealer." *Id*. at 61. Minutes after the incident, plaintiff stated something to the effect of "Oh my god, I'm going to get fired."[1] ECF No. 40-10 at 73-74. Plaintiff received first aid and then was transported to a clinic where a medical provider diagnosed her with a "fingertip avulsion" with an "open wound of left index finger with damage to nail." ECF No. 40-4 at 5. Plaintiff was then placed on workers' compensation leave and received care through defendant's insurance provider, Travelers. *See id*.; ECF No. 40-10 at 188.

On the following day, May 9, 2023, after an investigation and in consultation with defendant's plant manager and plaintiff's supervisor, defendant's production manager decided that corrective action needed to be taken against plaintiff for violating the LOTO program. *See* ECF No. 40-10 at 263-64, 268-69. On or about May 11, 2023, Norma Gomez, the head of HR for defendant, was asked to recommend the appropriate corrective action. *Id*. at 388-90. After investigating the matter, Gomez determined that plaintiff violated the LOTO program, and because it's a "zero tolerance" program, Gomez determined that plaintiff's employment should be terminated. *Id*. at 393-94.

On May 23, 2023, Gomez sent an email to defendant's production manager, defendant's plant manager, and plaintiff's supervisor to recommend that plaintiff's employment be terminated. *Id*. at 404-405, 418. Each of these individuals agreed with Gomez's recommendation. *Id*. at 407-408. On May 25, 2023, plaintiff met in-person with Gomez,

---

[1] When asked why she made this statement, plaintiff explained that another employee had been terminated for sticking her hand into a machine, and that plaintiff therefore thought that she also would be terminated. ECF No. 40-10 at 73-74.

defendant's production manager, defendant's plant manager, and plaintiff's supervisor. *Id*. at 67-68, 409-10. At this meeting, plaintiff was terminated for failing to comply with the LOTO program.[2] *Id*.

### Procedural History

After plaintiff filed suit in the San Joaquin Superior Court, defendant removed the case. ECF No. 1. The parties have consented to magistrate judge jurisdiction. ECF No. 9. In the second amended complaint, plaintiff brings claims for disability discrimination, failure to prevent discrimination, failure to accommodate, and wrongful termination. ECF No. 11 ¶¶ 18-47. Defendant now moves for summary judgment as to all claims.[3] ECF No. 40. Plaintiff opposes the motion as to all claims. ECF No. 42. Defendant has filed a reply. ECF No. 44.

Additionally, both parties have filed requests to seal documents pursuant to Local Rule 141. *See* ECF Nos. 39 & 41. The parties assert that such documents should be sealed because they contain personnel records and discussions thereof that are legally protected from disclosure. *See id*. The parties further provide that these documents were produced under the protective order issued by this court. *See* ECF No. 27. Both requests to seal will be granted.

### Legal Standard

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Washington Mutual Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011). An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party, while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

---

[2] Coworker One was issued a verbal reprimand for failure to "scan and obtain visual confirmation of the area to ensure the machine was clear before turning the machine back on." ECF No. 40-10 at 271. Defendant determined that a different corrective action was appropriate because Coworker One did not violate the LOTO program. *Id*. at 267.

[3] Defendant also has filed a request for judicial notice regarding portions of the California Code of Regulations. ECF No. 40-11. This request is unopposed. Because state regulations are properly subject to judicial notice, defendant's request for judicial notice is granted. *See id*.

Each party's position must be supported by: (1) citations to particular portions of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) argument showing that the materials cited do not establish the presence or absence of a genuine factual dispute or that the opposing party cannot produce admissible evidence to support its position. *See* Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The court may consider other materials in the record not cited by the parties, but it is not required to do so. *See* Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party meets this initial burden, the burden then shifts to the non-moving party "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle*, 627 F.3d at 387 (citing *Celotex Corp.*, 477 U.S. at 323). "[A] district court has no independent duty 'to scour the record in search of a genuine issue of triable fact,' and may 'rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.'" *Simmons*, 609 F.3d at 1017 (quoting *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996)). Moreover, the non-moving party must "show more than the mere existence of a scintilla of evidence." *In re Oracle*, 627 F.3d at 387 (citing *Anderson*, 477 U.S. at 252). However, the non-moving party is not required to establish a material issue of fact conclusively in its favor; it is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Electrical Serv., Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987).

The court must apply standards consistent with Rule 56 to determine whether the moving party has demonstrated there to be no genuine issue of material fact and that judgment is appropriate as a matter of law. *See Henry v. Gill Indus., Inc.*, 983 F.2d 943, 950 (9th Cir. 1993). "[A] court ruling on a motion for summary judgment may not engage in credibility determinations or the weighing of evidence." *Manley v. Rowley*, 847 F.3d 705, 711 (9th Cir. 2017) (citation omitted). The evidence must be viewed "in the light most favorable to the nonmoving party" and "all justifiable inferences" must be drawn in favor of the nonmoving party. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 772 (9th Cir. 2002); *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

## Discussion

The court addresses the claims in the following order: (1) disability discrimination; (2) failure to prevent discrimination: (3) failure to accommodate; and (4) wrongful termination.[4]

## I.      Disability Discrimination

Plaintiff alleges that defendant discriminated against her on the basis of her disability in violation of California Government Code § 12940(a). ECF No. 11 ¶¶ 18-23. The California Supreme Court has held that because "direct evidence of intentional discrimination is rare," discrimination claims "must usually be proved circumstantially." *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 354 (2000). Accordingly, "California has adopted the three-stage burden-shifting test established by the United States Supreme Court" in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Id.* Both parties agree that this claim is analyzed under *McDonnell Douglas*. *See* ECF No. 40 at 18; ECF No. 42 at 14.

---

[4] The court declines to rule on defendant's objections to plaintiff's proffered evidence. *See* ECF No. 44-1. On motions for summary judgment, courts routinely decline to issue formal rulings on such objections and instead "self-police evidentiary issues." *See Grindstone Indian Rancheria v. Olliff*, No. 2-17-cv-2292-JAM-JDP, 2021 WL 3077464, at *1 (E.D. Cal. July 21, 2021) (citing *Sandoval v. Cty. Of San Diego*, 985 F.3d 657, 665 (9th Cir. 2021)). Indeed, the Court of Appeals has held that "[t]o survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of Federal Rules of Civil Procedure 56." *Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001). As such, objections are often "duplicative of the summary judgment standard itself." *Burch v. Regents of the University of California*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006).

6

"[T]he *McDonnell Douglas* test places on the plaintiff the initial burden to establish a prima facie case of discrimination." *Id.* at 354. "On a disability discrimination claim, the prima facie case requires the plaintiff to show he or she (1) suffered from a disability, or was regarded as suffering from a disability; (2) could perform the essential duties of the job with or without reasonable accommodations, and (3) was subjected to an adverse employment action because of the disability or perceived disability." *Wills v. Superior Ct.*, 195 Cal. App. 4th 143, 159-60 (2011) (cleaned up). "If . . . the plaintiff establishes a prima facie case, a presumption of discrimination arises." *Guz*, 24 Cal. 4th at 355.

Once the presumption arises, "the burden shifts to the employer to rebut the presumption by producing admissible evidence, sufficient to raise a genuine issue of fact and to justify a judgment for the employer that its action was taken for a legitimate, nondiscriminatory reason." *Id.* at 355-56 (cleaned up). "If the employer sustains this burden, the presumption of discrimination disappears." *Id.* at 356. "The plaintiff must then have the opportunity to attack the employer's proffered reasons as pretexts for discrimination, or to offer any other evidence of discriminatory motive." *Id.* "Mere assertions that an employer had discriminatory motivation and intent is inadequate, without substantial factual evidence, to raise a genuine issue of material fact as to pretext in order to avoid summary judgment." *Collings v. Longview Fibre Co.*, 63 F.3d 828, 834 (9th Cir. 1995) (cleaned up).

Here, assuming *arguendo* that plaintiff has established a prima facie case of disability discrimination, defendant has provided a legitimate, nondiscriminatory reason for plaintiff's termination, and plaintiff fails to show that such reason is pretext for discrimination. Both parties agree that, to comply with legal requirements, defendant maintained a "Lockout/Tagout" or "LOTO" program. *See* ECF No. 42-1 at 4; ECF No. 40-11 at 10-13. Specifically, defendant "was required to have a written hazardous energy control procedure, specific to each machine/piece of equipment that included, among other things, the intended use of such a procedure and the procedural steps for shutting down such machines and placing locks and tags on such machines." ECF No. 40 at 12 (citing Cal. Code Regs. tit. 8, § 3314). Plaintiff "was up to date on her authorized training for lock/tagout at the time of the incident," which included

7

"hands-on training for the equipment, included machine guarding training, avoiding reaching in injuries training and the general awareness training for lockout/tagout."[5]  ECF No. 40-10 at 191-92; *see also* ECF No. 40-2 at 6-25.  Plaintiff most recently had completed training regarding the LOTO program on January 20, 2021.  *See* ECF No. 40-10 at 18; ECF No. 40-2 at 6.  Plaintiff also acknowledges that she received training that instructed her to "[u]se the appropriate tool to reach the stuck product only after having locked and tagged the machine" and to "[n]ever use [her] hand."[6]  ECF No. 40-10 at 72-73.

Plaintiff states that although she had been trained on locking out and tagging out on the Affeldt machine, she "never locked out and tagged out" of it.  ECF No. 40-10 at 25-26.  Without locking out or tagging out the machine per defendant's policy, plaintiff reached her hand inside the machine to pull a plastic film "that got stuck a bit."  *Id*. at 41.  Plaintiff also acknowledges that there was a "metal hook there that we could use to, you know, pull the bread out if it got stuck, or the plastic itself."  *Id*. at 44.  However, plaintiff states that she thought that "it was faster" to stick her hand into the machine because she "thought the machine was off" despite not tagging out or locking out of the machine.  *Id*. at 44-45.  Notably, plaintiff states that she did not remember any other instance in which she had put her hand inside the Affeldt machine.  *Id*. at 43-44.

---

[5] Plaintiff asserts that "her last hands-on LOTO audit for the Affeldt machine had occurred in 2016."  ECF No. 42-4 at 2.  This statement does not dispute that plaintiff was up-to-date on her LOTO training; it only shows that defendant had not audited plaintiff's performance on that machine since 2016.  Additionally, in her opposition brief, plaintiff states that she "was due for her annual online training."  ECF No. 42 at 18.  However, plaintiff does not provide a record cite for this proposition.  *See id*.  A review of plaintiff's opposition brief and separate statement of facts does not reveal any specific record cite in support of this proposition.  *See generally* ECF No. 42; ECF No. 42-2.  As noted, the court "has no independent duty to scour the record in search of a genuine issue of triable fact, and may rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment."  *See Simmons*, 609 F.3d at 1017 (cleaned up).  Moreover, even if plaintiff were due for additional training at the time of her incident, there is no dispute that she knew on the day of the incident that she was not to place her hand into the Affeldt machine without first following the LOTO program.  *See* ECF No. 40-10 at 25-26.

[6] Plaintiff's expert concludes that defendant's training materials "were outdated, incomplete, and lacked documentation of machine-specific LOTO verification."  ECF No. 42-5 at 18.  However, this expert report does not create a genuine dispute because plaintiff had actual knowledge that she was to follow the LOTO program before reaching her hand into the Affeldt machine.  *See* ECF No. 40-10 at 25-26.

After investigating the matter, Gomez, the head of HR for defendant, determined that plaintiff violated the LOTO program, and because it's a "zero tolerance" program, Gomez recommended that plaintiff's employment be terminated. ECF No. 40-10 at 393-94. Gomez states that, at the time of the incident, defendant's records revealed that "9 employees were found to have violated Rich's lockout/tagout or 'LOTO' policy. The employment of all such employees was terminated." ECF No. 40-3 at 2. After other managers and supervisors agreed with Gomez's recommendation, defendant subsequently terminated plaintiff's employment on the basis that she violated the company's LOTO program. ECF No. 40-10 at 68-69. Accordingly, defendant has shown that plaintiff's employment was terminated for "a legitimate, nondiscriminatory reason" and thus "the presumption of discrimination disappears." *See Guz*, 24 Cal. 4th at 356.

Plaintiff does not establish that this proffered reason is pretext for discrimination. Plaintiff first argues that defendant improperly relies on "a made-up 'zero tolerance' policy for LOTO violations." ECF No. 42 at 17. As plaintiff points out, while defendant's safety policy indicates that it has a zero tolerance policy for the possession or consumption of illegal drugs during work hours, it does not specify that it has a zero tolerance policy for "[f]ailure to follow proper lock-out/tag-out procedures." *See* ECF No. 42-5 at 178-79. However, the policy provides that a violation of the LOTO program may result in "termination without prior warning, dependent upon the severity of the violation." *Id*. at 180.

Moreover, plaintiff does not dispute that, before the incident, all nine employees who were found to have violated the LOTO program were terminated. *See* ECF No. 40-3 at 2. Plaintiff also acknowledges that, minutes after the incident, she stated something to the effect of "Oh my god, I'm going to get fired." ECF No. 40-10 at 73-74. When asked why she made that statement, plaintiff explained that another employee had been terminated for sticking her hand into a machine, and that plaintiff therefore thought that she also would be terminated. *Id*. There is no dispute that plaintiff was on notice of defendant's strict adherence to the LOTO program.

Next, plaintiff argues that after she was terminated, two of defendant's employees ("Coworker Two" and "Coworker Three") were not terminated for violating the LOTO program. As an initial matter, even if plaintiff is correct, such evidence would not show that defendant's

9

proffered reason for terminating plaintiff's employment was pretextual because the incidents involving Coworker Two and Coworker Three occurred *after* defendant terminated plaintiff's employment.  Nonetheless, there is no evidence that defendant ever determined that Coworker Two violated the LOTO program.[7]  *See* ECF No. 42-5 at 305, 352.  Instead, as defendant asserts, it appears that neither Coworker Two nor Coworker Three were found to have violated the LOTO program.  *See* ECF No. 44 at 12-13.  Moreover, Gomez states that the zero tolerance policy for LOTO violations has not changed since plaintiff's injury.  ECF No. 40-10 at 394.

Plaintiff also argues that it was defendant's "pattern and practice to forego LOTO procedures before having an employee reached [sic] his or her body into the Affeldt machine." ECF No. 42 at 6-7.  To support this assertion, plaintiff cites "Undisputed Material Facts 15, 17, and 24." *Id*. at 7.  These citations refer to plaintiff's response to defendant's statement of materials facts.  In response to each of these UMFs, plaintiff provided five paragraphs of text and the following string cite: "Darling Decl., Ex. 4 [Pltf. Depo, Vol. 1], pp. 31:25 – 32:14, 36:17-23, 41:9-15, 42:12 – 43:4, 113:5 – 114:3, 115:17 – 116:12, 117:25 – 119:22; Ex. 5 [Pltf. Depo, Vol. 2], pp. 157:11-20, 159:9-14, 169:16 – 170:20, 171:14 – 172:17]; Ex. 10 [Morales Depo], pp. 20:4-7, 23:9-23, 31:3-6, 43:16-19, 45:14 – 46:16, 47:5 – 58:1, 50:11-19, 51:18-24; Ex. 8 [Kaur Depo], pp. 24:5-10, 64:1-23, 67:2-22, 70:14-20, 82:19-24; Ex. 6 [Ruiz Depo], pp. 20:11-14, 89:15 – 90:22, 96:23 – 97:24; Ex. 7 [Castaneda Depo], pp. 17:18 – 18:3, 58:12 – 60:25, 61:13-17,

---

[7] As for Coworker Three, plaintiff's opposition brief only cites "Undisputed Material Fact 52." *See* ECF No. 42 at 19.  This citation refers to plaintiff's response to defendant's statement of material facts, and in response to UMF 52, plaintiff provided five paragraphs of text and the following string cite: "Darling Decl., Ex. 14 [Cisneros Depo] p. 84:6-24, Ex. G; Ex. 15 [May 4, 2023 Email]; Ex. 11 [Garcia Depo], pp. 37:7 – 22, 52:17 – 53:24, 65:21 – 66:20, Ex. B; Ex. 16 [Gomez Depo] p. 63:16 – 64, 69:19 – 14, 76:18 – 79:16, 81:25 – 83:9, 103:1-6, Ex's. D, E, F, G; Ex. 16 [Samrari Depo] p. 85:17 – 86:20, 128:15 – 129:5, 133:10-24, 137:5 – 138:5, 146:20-24, Ex. S; [Rigg Depo], pp. 132:15-133:11, Ex. Q; Ex. 19 [Sandoval Depo], p. 21:23-25, 23:23 – 24:6, 30:16-23; Ex. 6, p. 120:23-121:1." *See* ECF No. 42-1 at 26.  As noted, the court "has no independent duty to scour the record in search of a genuine issue of triable fact, and may rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *See Simmons*, 609 F.3d at 1017 (cleaned up).  By citing large swaths of the record, plaintiff has failed "to identify with reasonable particularity the evidence that precludes summary judgment." *See id*.  Moreover, for the reasons explained above, even if there was evidence supporting plaintiff's assertion, that would not show that defendant's nondiscriminatory reason was pretextual.

66:17 – 67:1, 95:3-6; Ex. 3 [Charles Craig Amended Report].” *See, e.g.*, ECF No. 42-1 at 8. As with plaintiff's record cites regarding Coworker Three, this citation to a large swath of the record does not comply with plaintiff's burden “to identify with reasonable particularity the evidence that precludes summary judgment,” and the court is not required “to scour the record in search of a genuine issue of triable fact.” *See Simmons*, 609 F.3d at 1017.

Although not obligated to do so, the court has conducted a cursory review of the cited record and found no evidence demonstrating that defendant instructed plaintiff not to follow the LOTO program when placing her hand into the Affeldt machine. For example, while plaintiff states that she was trained not to lockout/tagout the Affeldt machine, she was referencing a training provided in 2016, which is from before defendant purchased the factory in 2020 and instituted the LOTO program. *See* ECF No. 42-5 at 28-29. Plaintiff also provides testimony from another employee who operated the Affeldt machine “before 2018 or 2019,” which, as noted, is before defendant took over the factory. *See id*. at 104. Additionally, that one of defendant's employees has not seen another employee follow the LOTO program as to the Affeldt machine while replacing film does not mean that plaintiff was not instructed to follow that procedure. *See id*. at 87. As noted, while LOTO adherence is strictly required when reaching into the Affeldt machine, an employee can typically change a film roll “without opening guards or without reaching in.” *Id*. at 68-69; *see also* ECF No. 42 at 8. For example, one employee stated that she would clear jams by opening the safety guard doors, which does not require following the LOTO program.[8] ECF No. 42-5 at 108-09. Thus, an employee did not have to lockout the Affeldt machine unless there was a jam that required an employee to insert their hand into the machine other than through the safety guard doors. ECF No. 42-5 at 127. Accordingly, any evidence that an employee did not follow the LOTO program before changing the film does not establish that such employee necessarily inserted their hand into the machine without complying with the LOTO program. Plaintiff does not identify with particularity any evidence that defendant's

---

[8] When the safety guard doors are open on the Affeldt machine, the machine cannot be restarted. ECF No. 40-10 at 174. If the safety guard doors are opened while the machine is on, then the machine will automatically stop. *Id*. at 174-75.

practice was to have employees reach into the Affeldt machine without first following the LOTO program.

Lastly, plaintiff argues that the timing of Gomez's recommendation for terminating plaintiff's employment reveals that she acted with discriminatory intent. ECF No. 42 at 20-21. As noted, the incident occurred on May 8, 2023. ECF No. 40-10 at 43. The following day, after an investigation and in consultation with defendant's plant manager and plaintiff's supervisor, defendant's production manager decided that corrective action needed to be taken against plaintiff for violating the LOTO program. *See id*. at 263-64, 268-69.

On or about May 11, 2023, Gomez was asked to recommend the appropriate corrective action. *Id*. at 388-90. In considering the appropriate recommendation, Gomez reviewed training materials regarding the LOTO program, considered plaintiff's file, and spoke with other employees. *Id*. at 391-93, 398-400. On May 22, 2023, Gomez learned that plaintiff was receiving care administered by defendant's workers' compensation insurance, Travelers, and that plaintiff was recovering with work restrictions that defendant was unable to accommodate (no use of left upper extremity).[9] ECF No. 42-5 at 300-01. On May 23, 2023, Gomez met with defendant's environmental health and safety specialist, as well as claims adjusters from Travelers. *Id*. at 250-51, 271. After that meeting, Gomez sent an email to defendant's production manager, defendant's plant manager, and plaintiff's supervisor to recommend that plaintiff's employment be terminated effective May 25, 2023. *Id*. at 404-405, 418. In this email, Gomez also communicated that plaintiff had submitted a Travelers claim, and that plaintiff "is currently recovering with restrictions we are unable to accommodate (no use of left upper extremity) with a follow up visit on 5/22/2023." *Id*. at 418.

Plaintiff argues that a reasonable jury could find that defendant's reason for termination was pretextual because Gomez learned of plaintiff's work restrictions, met with Travelers' claim adjusters, and included information regarding plaintiff's need for accommodations in her email. ECF No. 42 at 20-21. However, there is no evidence that Gomez recommended termination

_____

[9] Plaintiff's medical provider expected that plaintiff would reach maximum medical improvement by August 8, 2023. ECF No. 42-5 at 11.

12

*because of* plaintiff's workers' compensation claim or disability.  The evidence identified by plaintiff falls far short of satisfying her requirement to provide "substantial factual evidence" of discriminatory motivation.  *See Collings*, 63 F.3d at 834.  Moreover, defendant's production manager, defendant's plant manager, and plaintiff's supervisor each independently agreed with Gomez that plaintiff's employment should be terminated.  *See id*. at 407-408.  There is no evidence that any of these three individuals were motivated by any reason other than plaintiff's uncontested violation of the LOTO program; indeed, plaintiff does not even argue as much.

Accordingly, because plaintiff has failed to show that defendant's nondiscriminatory reason was pretextual, defendant is entitled to summary judgment as to plaintiff's claim for disability discrimination.  *See Guz*, 24 Cal. 4th at 370.

## II.    Failure to Prevent Discrimination

Plaintiff alleges that defendant failed to take steps necessary to prevent discrimination in violation of California Government Code § 12940(k).  ECF No. 11 ¶¶ 32-39.  This claim fails as a matter of law because plaintiff does not sustain an underlying discrimination claim.  As a California appellate court explained, "the commonsense approach used by the trial court has great intuitive appeal: 'there's no logic that says an employee who has not been discriminated against can sue an employer for not preventing discrimination that didn't happen, for not having a policy to prevent discrimination when no discrimination occurred.'"  *Trujillo v. N. Cnty. Transit Dist.*, 63 Cal. App. 4th 280, 289 (1998) (alterations omitted).

Accordingly, defendant is entitled to summary judgment as to plaintiff's claim for failure to prevent discrimination.  *See Oliver v. Microsoft Corp.*, 966 F. Supp. 2d 889, 898 (N.D. Cal. 2013) (granting summary judgment to the defendant as to the plaintiff's claim for failure to prevent discrimination "in the absence of a viable underlying claim") (citing *Trujillo*, 63 Cal. App. 4th at 288-89).

## III.    Failure to Accommodate

Plaintiff alleges that defendant failed to accommodate her disability in violation of California Government Code § 12940(m).  ECF No. 11 ¶¶ 24-31.  Plaintiff acknowledges that, between the date of the incident and the date on which her employment was terminated, she was

allowed to take a leave of absence. *See* ECF No. 42 at 16. Her argument, then, is that "Defendant simply terminated Plaintiff after learning of her workplace restrictions and ongoing recovery, which was expected to last a couple of months." ECF No. 42 at 21.

The Court of Appeals has recognized that a failure to accommodate claim is, "from a practical standpoint, the same" as a claim for unlawful discharge where, as here, the consequence of the alleged failure to accommodate is termination. *See Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1139 (9th Cir. 2001). The court held that "[t]he link between the disability and termination is particularly strong where it is the employer's failure to reasonably accommodate a known disability that leads to discharge for performance inadequacies resulting from that disability." *Id*. at 1140.

Here, as established above, defendant terminated plaintiff's employment because she violated company policy, not because she was disabled. *See supra* Discussion, Part I. Moreover, plaintiff's LOTO violations were not "performance inadequacies resulting from . . . disability." *See Humphrey*, 239 F.3d at 1140. On the contrary, plaintiff's purported disability resulted from her performance inadequacies. Plaintiff has not identified any case law, and the court has not located any, that establishes that she can proceed on a failure to accommodate claim under these circumstances.

Defendant offers in its moving papers two other persuasive authorities supporting its position that it is entitled to judgment as to this claim. First, defendant cites a decision by the Court of Appeals for the Tenth Circuit. *See* ECF No. 40 at 27. In *Dewitt*, the court held that the Americans with Disabilities Act "does not require employers to reasonably accommodate an employee's disability by overlooking past misconduct."[10] *Dewitt v. Sw. Bell Tel. Co.*, 845 F.3d 1299, 1316 (10th Cir. 2017). Second, the Equal Opportunity Commission provides that "[a]n employer never has to excuse a violation of a uniformly applied conduct rule that is job-related and consistent with business necessity" and that "[a]n employer may discipline an employee with

---

[10] "Because the FEHA provisions relating to disability discrimination are based on the ADA, decisions interpreting federal anti-discrimination laws are relevant in interpreting the FEHA's similar provisions." *Humphrey*, 239 F.3d at 1133 n.6.

a disability for engaging in such misconduct if it would impose the same discipline on an employee without a disability." *See* The Equal Employment Opportunity Commission, *Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the ADA*, No. 35, October 17, 2002. While not binding, these persuasive authorities support the conclusion that defendant did not violate the law by terminating plaintiff's employment for her failure to follow the LOTO program. Plaintiff has not provided any response to these authorities. *See* ECF No. 42.

Accordingly, defendant is entitled to summary judgment as to plaintiff's claim for failure to accommodate.

**IV.    Wrongful Termination**

Finally, plaintiff alleges that defendant wrongfully terminated her employment in violation of public policy. ECF No. 11 ¶¶ 40-47. To succeed on a claim for wrongful termination, "a plaintiff must identify a fundamental public policy based on a statutory, constitutional, or regulatory provision." *Galeotti v. Int'l Union of Operating Eng'rs Loc. No. 3*, 48 Cal. App. 5th 850, 856-57 (2020). Because plaintiff has no other remaining claims in this action, she fails to establish that defendant violated a "fundamental public policy based on a statutory, constitutional, or regulatory provision." *See id.* Indeed, plaintiff acknowledges that her claim for wrongful termination necessarily relies on her "underlying claims for disability discrimination and failure to accommodate." *See* ECF No. 42 at 22.

Accordingly, defendant is entitled to summary judgment as to plaintiff's claim for wrongful termination in violation of public policy. *See Hanson v. Lucky Stores, Inc.*, 74 Cal. App. 4th 215, 229 (1999) (holding that "because [the plaintiff's] FEHA claim fails, his claim for wrongful termination in violation of public policy fails").[11]

---

[11] Because there are no remaining claims in this action, the court does not consider the parties' arguments concerning damages, since plaintiff's request for damages is moot. *See* ECF No. 40 at 28-34; ECF No. 42 at 22-24; ECF No. 44 at 15-17.

**Conclusion**

Accordingly, it is hereby ORDERED that:

1. Defendant's motion for summary judgment, ECF No. 40, is GRANTED.

2. Defendant's request to seal documents, ECF No. 39, is GRANTED.

3. Plaintiff's request to seal documents, ECF No. 41, is GRANTED.

4. The Clerk of Court is directed to enter judgment accordingly and close this case.

IT IS SO ORDERED.

Dated:    July 6, 2026                    _____
                                          JEREMY D. PETERSON
                                          UNITED STATES MAGISTRATE JUDGE

16